# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYGANDA GILMORE, | No. 4:19-CV-00262 |
| Petitioner, | (Judge Brann) |
| v. | |
| WARDEN, | |
| Respondent. | |

## MEMORANDUM OPINION

### MAY 19, 2020

Presently before the Court is Petitioner Tyganda Gilmore's petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241, challenging two institutional disciplinary decisions that resulted in, *inter alia*, a loss of good time credits.[1] Respondent submitted an Answer, and the petition is now ripe for disposition.[2] For the reasons that follow, the Petition will be denied.

**I.     BACKGROUND**

Petitioner is presently incarcerated at the Federal Correctional Center at Allenwood in White Deer, Pennsylvania, and who has a projected release date of March 5, 2021.

---

[1] Doc. 1.
[2] Doc. 8.

### A. Incident Report 2936616

On January 6, 2017, while Petitioner was incarcerated at the United States Penitentiary at Lee in Virginia, Incident Report No. 2936616 was issued charging him with violations of Bureau of Prisons ("BOP") Codes 307, refusing to obey an order; 312, insolence; and 203, threatening another with bodily harm.[3] The incident report provides as follows:

> On January 5, 2017, at approximately 12:15 PM, while collecting food trays inmate Gilmore, Tyganda Reg. No. 13255-171 refused to relinquish his food trays, and also refused to submit to hand restraints. I then gave inmate Gilmore a direct order to submit to hand restraints which he again refused. Inmate Gilmore then became highly agitated and stated "If you want these fuckin trays come and get them mother fucker." Inmate Gilmore also began making threats against any inmate that would be placed in his cell, stating "If you put anyone in here I am gonna fuck them up." I then notified the SHU Lieutenant of inmate Gilmore's behavior and exited the range.[4]

The incident report was written on January 5, 2017 at 3:00 p.m. and it was delivered to Petitioner on January 6, 2017 at 11:30 a.m.[5] During the investigation, Petitioner was advised of his rights including the right to remain silent, and he stated that he understood his rights.[6] Petitioner's only comment was "no comment."[7]

According to the incident report, the investigating staff member referred the incident report to the Unit Discipline Committee ("UDC") for a hearing.[8] At the

---

[3] Doc. 8 at 2.
[4] Doc. 8-1 at 8.
[5] *Id.*
[6] *Id.* at 9.
[7] *Id.*
[8] *Id.*

hearing,[9] Petitioner was advised of his right to remain silent during the disciplinary process.[10] He stated that he understood his right to remain silent and then stated that he only refused an order, that he didn't know about the other parts, the facts are incorrect, and that he would try to explain it to the DHO.[11] The UDC referred the case to the Discipline Hearing Officer ("DHO") and recommended appropriate sanctions.[12]

On January 9, 2017, Petitioner was provided with Notice of Discipline Hearing before the DHO and Inmate Rights at Discipline Hearing. (Id. at 3, 6.) The disciplinary hearing was held on January 25, 2017.[13] At it, Petitioner was afforded a staff representative, the opportunity to make a statement, to present evidence, and to call witnesses.[14] Petitioner requested a staff representative and requested that the representative view video footage of the incident, and the warden appointed Mark Ryan.[15] Staff Representative Ryan informed Petitioner that there was no video of the incident, and that even if it did exist, the video would have no audio component and does not show anything inside of Petitioner's cell.[16] He further explained any video would only show that Petitioner refused to submit to hand restraints and

---

[9] The date that the UDC hearing was held is unclear from the incident report because of partially illegible handwriting. *See id.*
[10] *Id.* at 8.
[11] *Id.*
[12] *Id.*
[13] Doc. 8 at 3.
[14] *Id.*
[15] *Id.*
[16] *Id.*

because Petitioner already admitted he did, it would not be conclusive as to the charged misconduct.[17] Petitioner provided a statement admitting to refusing to submit to restraints, stating that "I refused to cuff up but I didn't threaten anybody."[18] Petitioner requested Captain J. Phelps to appear as a witness on his behalf. The DHO explained to him that Captain Phelps is part of the Institutional Executive Staff and is not permitted to be called as a witness or staff representative at disciplinary hearings.[19]

Based on the greater weight of the evidence, the DHO found Petitioner committed the prohibited acts of threatening another (Code 203) and refusing an order (Code 307).[20] In reaching that conclusion, the DHO relied on the reporting officer's account as written in the incident report, the statement given by the staff representative, and Petitioner's denial, stating:

> The DHO considered the statement given by your staff representative, however, does not consider it to be a valid reason to excuse you from your behavior in this instance. The DHO considered your statement and defense to the charge. However, the DHO could not ignore the reporting officer's personal account of the incident. He stated that you refused to submit to hand restraints, as you admitted, but that you also said you would "If you put anyone in here I am gonna fuck them up." This indicated that you were communicating an intent to inflict bodily harm on any other inmate they were to place in your cell. This is clearly a threat to do bodily harm to another person. The DHO could see no obvious reason the reporting staff member had for fabricating this incident, while your reason for providing a less than factual statement

---

[17] *Id.*
[18] *Id.*
[19] *Id.* at 4.
[20] *Id.*

4

to the DHO was obvious.  You were attempting to avoid the consequences of your actions.[21]

Petitioner was sanctioned in accordance with BOP policy for a violation of Code 203, the disallowance of twenty-seven days' good conduct time, and for Code 307, the disallowance of fourteen days' good conduct time.[22]  The DHO explained that the sanctions were being imposed because any sort of threat poses a serious threat to the health, safety, and welfare of all other inmates and staff, and such behavior cannot be tolerated.  Petitioner received a written copy of the DHO's findings on February 21, 2017.[23]

### B.     Incident Report 2940352

On January 24, 2017, Petitioner received a copy of incident report 2940352, charging him with Code 224, attempted to assault staff, after an incident on January 17, 2017, where Petitioner allegedly attempted to head butt and break away from escorting staff when being taken to a new cell.[24]  The incident report provides:

> On January 17, 2017, at approximately 10:29 a.m., I Senior Officer D. Hamilton was escorting I/M Gilmore, Tyganda #13255-171 from his cell (201) to his new cell on D-Range when we got to the top of the steps on the upper concourse when I/M Gilmore . . . pulled away while trying to head butt me in the process, [he] got about 2 feet away when myself . . . and Officer B. Woodard placed the I/M against the wall and then with the least amount of force necessary placed I/M . . . on the floor until further assistance arrived.[25]

---

[21]   *Id.*
[22]   *Id.*
[23]   *Id.*
[24]   *Id.* at 5.
[25]   Doc. 8-1 at 18.

The incident report was written on January 17, 2017 at 11:00 a.m. and it was delivered to Petitioner on January 24, 2017.[26] During the investigation, Petitioner was advised of his rights including the right to remain silent, and he stated that he understood his rights.[27] Petitioner's only comment was that he "would do it again if he had too."[28]

On January 25, 2017, Petitioner was provided with the Notice of Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing.[29] Petitioner's disciplinary hearing was held on January 26, 2017.[30] Although Petitioner waived them, he was afforded the right to select a staff representative and call witnesses.[31] Petitioner was given the opportunity to make a statement and present evidence, and stated that he told the officer he would not take a cellmate and pulled away from the staff member in the opposite direction, but that the officer did not include everything in the incident report.[32]

Based on the greater weight of the evidence, the DHO found Petitioner committed the prohibited act of attempted assault on any person (Code 224A) stating:

> The DHO considered your statement to the charge against you. The DHO asked if you admitted or denied the charge against you. You

---

[26] Id.
[27] Id. at 20.
[28] Id.
[29] Doc. 8 at 5.
[30] Id.
[31] Id.
[32] Id. at 5-6

6

replied, "He came to the door and said he was moving me and I told him I wasn't taking a cellie. I did pull away from him in the opposite direction. He's not including everything." The DHO considered your denial but gave greater weight to the attestment of the reporting staff member. Specifically, Officer Hamilton attests while escorting you to your new cell, the two of you reached the top of the steps on the upper concourse when you pulled away from him while attempting to head butt him in the process. You got two feet away when he and Officer B. Woodard placed you against the wall and then with the least amount of force necessary placed you on the floor until further assistance arrived. Your denial does not excuse you from the act and you provided no evidence to support your claim other than you say it is so. The reporting officer has no vested interest in you and nothing to gain by fabricating this charge and you provided no evidence to support he did. Therefore, the statement of Officer Hamilton outweighs your defense.[33]

The DHO sanctioned Petitioner in accordance with BOP policy with disallowance of twenty-seven days' good conduct time.[34] The DHO further explained that any assault on another inmate or staff threatens the health, safety, and welfare of all other inmates and staff, and has the potential to cause larger disturbances, which staff may not be able to control. Petitioner received a written copy of the DHO's findings on February 21, 2017.[35]

Petitioner filed the instant habeas petition on February 14, 2019.[36] In it, Petitioner argues that he is challenging the disciplinary action arising from Incident Reports Nos. 2936616 and 2940352 because correctional officers fabricated them and put words of their own into the incident reports to cause harm to him. Petitioner

---

[33] *Id.* at 6.
[34] *Id.* at 7.
[35] *Id.*
[36] Doc. 1.

7

states that these actions occurred in retaliation for Petitioner's filing of lawsuits and his history of past sexual misconduct convictions. Petitioner requests that the Court reinstate the days of good conduct time he was docked for each incident.[37]

## II. DISCUSSION

### A. Legal Standard

A habeas corpus petition is the proper mechanism for a federal prisoner to challenge the "fact or duration" of his confinement, including challenges to prison disciplinary proceedings, that affect the length of confinement, such as deprivation of good time credits.[38] A challenge to a disciplinary action resulting in the loss of good conduct time is properly brought pursuant to § 2241, "as the action could affect the duration of the petitioner's sentence."[39]

### B. Analysis

Prisoners are guaranteed certain due process protections when a prison disciplinary proceeding may result in the loss of good time credits.[40] The due process protections afforded an inmate must include (1) a written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to receive

---

[37] *See id.*
[38] *See Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973); *Muhammad v. Close*, 540 U.S. 749 (2004); *Edwards v. Balisok*, 520 U.S. 641 (1997); *Wilkinson v. Dotson*, 544 U.S. 74 (2005).
[39] *Queen v. Miner*, 530 F.3d 253, 254 n.2 (3d Cir. 2008).
[40] *See Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974).

assistance from an inmate representative; (4) a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) an appearance before an impartial decision making body.[41] Additionally, the revocation of good time only satisfies the minimum requirements of procedural due process when the findings of the prison disciplinary board are supported by "some evidence" in the record.[42] This standard is minimal and does not require an examination of the entire record, an independent assessment of the credibility of witnesses, or a weighing of the evidence.[43] The standard is simply whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board."[44]

Petitioner was provided with all the due process safeguards identified in *Wolff v. McDonnell*. Petitioner received written notice of all charges against him in both incident reports at least twenty-four hours prior to the hearings; he had an opportunity to receive assistance from a representative, which he did as to one of the incident reports; and he received written statements of the evidence relied on and the reasons for the disciplinary actions, and he appeared before impartial decision making bodies.[45]

---

[41] See *Crosby v. Piazza*, 465 F. App'x 168, 171-72 (3d Cir. 2012) (citing *Wolff*, 418 U.S. at 563-71).
[42] *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)).
[43] *Id.* (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)).
[44] *Id.* (quoting *Hill*, 472 U.S. at 455-56).
[45] See *Wolff*, 418 at 563-71.

Petitioner's requested witness, a member of the Institutional Executive Staff, was unable to testify due to BOP policy. In *Wolff*, the Supreme Court of the United States explained that the right to call witnesses is not absolute and must be tempered with the penological and safety needs of the institution:

> Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents.

Here, Respondent explains that Petitioner's desired witness was unable to testify due to his presence on the Institutional Executive Staff. The Court would be

remiss to second guess the policy decisions regarding prohibiting certain kinds of witnesses in DHO hearings in light of the Supreme Court's guidance in *Wolff*. Further, the Court notes that Petitioner has failed to establish the relevance of any testimony that this witness would have given. The Court cannot find a due process violation when the Petitioner has failed to establish the relevance of a witness and how his testimony would undermine the codes charged in that incident report.

To the extent that Petitioner argues that the decisions of the DHO were not supported by the record, the Court finds that there is some evidence in the record to support the DHO's decisions as to both incident reports. I note that, this Court's role is limited to determining whether "some evidence" exists in the record to support the DHO's decision; the Court does not reassess the evidence, take new evidence, or evaluate witness credibility.[46] The DHO relied on the incident reports, which included Petitioner's partial admissions as to some of the conduct charged, the statements of the reporting officers, the lack of evidence presented by Petitioner to establish fabrication, and as for one of the incident reports, the statement of the staff representative. Petitioner states that the charges were fabricated by correctional officers, but he provides no evidence to support this claim. These bald assertions

---

[46] *See, e.g.*, *McGee v. Scism*, 463 F. App'x 61, 62 (3d Cir. 2012) ("The 'some evidence' standard does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."); *Perez v. Rectenwald*, No. 12-cv-2114, 2013 WL 5551266, at *4 (M.D. Pa. Oct. 8, 2013) ("The Court's responsibility under *Hill* is not to weigh this evidence or assess its probative value, but merely to determine that at least some evidence exists to support the conviction").

cannot overcome the evidence relied upon by the DHO. Because there is some evidence in the record to support the violations charged in the incident reports, I conclude that Petitioner's due process rights were not violated and that he is not entitled to habeas relief.

Petitioner also argues that the incident reports were issued in retaliation for exercising his constitutional rights including his right of access to the courts.[47] Although arising in the civil rights context, such an argument may be cognizable in a § 2241 petition to the extent that it affects the duration of his sentence.[48] A prisoner alleging that prison officials have retaliated against him for exercising his constitutional rights must prove that (1) the conduct in which he was engaged was constitutionally protected, (2) he suffered "adverse action" at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.[49] Once a prisoner has made his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that it "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest."[50]

---

[47] *See* Doc. 1 at 7.
[48] *See McGee v. Scism*, 463 F. App'x 61, 64 (3d Cir. 2012) (citing *Queen v. Miner*, 530 F.3d 253, 255 n.2 (3d Cir. 2008)); *Speight v. Minor*, 245 F. App'x 213, 215 (3d Cir. 2007).
[49] *See Carter v. McGrady*, 292 F.3d 152, 157-58 (3d Cir. 2002); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).
[50] *Rauser*, 241 F.3d at 334 (incorporating *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

There is no merit to Petitioner's contention in light of his allegations and the evidence in the record. First, at no point during the disciplinary proceedings did Petitioner raise the argument of retaliation and thus this issue was neither developed during the investigation nor the disciplinary proceedings. It is not the Court's province to reopen the administrative proceedings in a habeas matter, reassess the weight of the evidence presented at the hearing, or entertain new theories that lack evidentiary support. Second, Petitioner has not met his burden to show that his exercise of a constitutional right was a substantial or motivating factor for the DHO's decision to discipline him given the evidence relied upon by the DHO in the reports. Notably, Petitioner only alleges in conclusory fashion that the incident reports were in retaliation for exercising his right of access to the courts. Even if he could demonstrate a *prima facie* case, there is evidence in the record that shows that the DHO would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.[51]

Here, Petitioner admitted to refusing to submit to hand restraints and pulling away from staff, and the DHO further relied on the statements by the reporting officers and the staff representative as to one of the incident reports. The DHO noted

---

[51] *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002) (applying *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001)); *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (holding that if a prison disciplinary committee's finding of a violation of prison rules is based on some evidence, that "finding essentially checkmates [a] retaliation claim") (citing *Hill*, 472 U.S. at 454–56).

13

that Petitioner had presented no evidence of fabrication as to either incident report. In sum, Petitioner has failed to establish a *prima facie* case of retaliation and is thus not entitled to relief.

Finally, to the extent Petitioner also argues that the loss of good time credit violates the Eighth Amendment because it is grossly disproportionate to the severity of the offense,[52] the Court notes that each instance of disallowance of time credit is within the range of available sanctions for the violations.[53] As such, the Court finds that the sanction imposed on Petitioner did not violate the Eighth Amendment.

## III. CONCLUSION

For the reasons set forth above, the Petition will be denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[52] *See Rummel v. Estelle*, 445 U.S. 263, 271-74 (1980).
[53] Petitioner was docked twenty-seven days for a violation of Code 203, fourteen days for a violation of Code 307, and twenty-seven days for a violation of Code 224A. *See* 28 C.F.R. § 541.3. *See also Shelton v. Jordan*, 613 F. App'x 134, 135 (3d Cir. 2015) ("[g]iven the severity of [petitioner's] offenses, and because the sanctions fall within the applicable range permitted by the regulation, we conclude that the punishment here did not violate the Eighth Amendment").